MICHAEL J. HEYMAN
United States Attorney

MAC CAILLE PETURSSON
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: mac.caille.petursson@usdoj.gov

MCKENZIE HIGHTOWER
Trial Attorney
Child Exploitation and Obscenity Section
1301 New York Ave NW, 11th Floor
Washington, DC 20530
Email: McKenzie.Hightower@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>  vs.<br><br>ANTHANEY O'CONNOR,<br><br>                    Defendant. | No. 3:25-cr-00003-SLG-KFR<br><br>UNITED STATES' SENTENCING MEMORANDUM |

**SENTENCING MEMORANDUM**

The United States recommends imposition of the following sentence:

**INCARCERATION..................................................................................70 MONTHS**
**SUPERVISED RELEASE.........................................................................20 YEARS**
**SPECIAL ASSESSMENT.................................................................................$100**

**AVAA**..................................................................................................**$35,000**
**RESTITUTION**..............................................................................**$3,000**
**FINE**..........................................................................................................**N/A**

## INTRODUCTION

The United States of America, by and through undersigned counsel, files this sentencing memorandum to aid the Court in understanding this case and to arrive at the most appropriate sentence.

The government recommends a sentence that includes the following components: 70 months imprisonment; a minimum of 20 years of supervised release; a mandatory $100 special assessment under 18 U.S.C. § 3013; a special assessment of $35,000 under 18 U.S.C. § 2259A; and restitution in an amount to be determined. These recommendations are amply justified by an analysis of the factors set forth in 18 U.S.C. § 3553(a), as well as the relevant United States Sentencing Guidelines (USSG), and they are necessary to provide just punishment, adequate deterrence, protection of the public, and needed psychological treatment for O'Connor's serious offense conduct.

## FACTS

On January 21, 2025, O'Connor was indicted on three counts of distribution, receipt, and possession of child sexual abuse material. On July 31, 2025, the defendant subsequently plead guilty to Count Two, receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), (b)(1), pursuant to a plea agreement. The agreement provided that the defendant would be sentenced to 60 to 70 months of imprisonment followed by a minimum of 20 years of supervised release.

//

*U.S. v. O'Connor*
3:25-cr-00003-SLG-KFR          Page 2 of 16

# CALCULATION OF THE USSG RANGE

The probation office has correctly calculated the sentencing range under the USSG. PSR at ¶¶ 17–29. The total adjusted offense level is 31, and O'Connor is in criminal history category III. *Id.* at ¶¶ 29, 38.

The government concurs with probation that O'Connor should receive several sentencing level enhancements based on special offense characteristics. *Id.* at ¶¶ 18–22. O'Connor should receive a two-level increase, under USSG §2G2.2(b)(2), because the child sexual abuse material recovered on his devices includes images and videos of prepubescent minors under 12 years old. *Id.* at ¶ 18. O'Connor should receive a two-level increase, under USSG §2G2.2(b)(3)(F), for engaging in the distribution of images of a female with exposed breasts and buttocks. *Id.* at ¶ 19. O'Connor should receive a four-level increase, under USSG §2G2.2(b)(4), for possessing material that portrays sadistic or masochistic conduct or other depictions of violence, evidenced by the defendant's possession of images containing toddlers and an animated drawing of bestiality. *Id.* at ¶ 20. O'Connor should receive a two-level increase, under USSG §2G2.2(b)(6), for using a computer, cellphone, and several interactive computer services, including Telegram, in the creation, exchange, and storage of this offense material. *Id.* at ¶ 21. Finally, O'Connor should receive a two-level increase, under USSG §2G2.2(7)(A), because the offense conduct involved at least 10 images, as forensic examination recovered 32 images depicting child sexual abuse material on O'Connor's devices. *Id.* at ¶ 22.

The government also concurs with probation that O'Connor should receive a three-level decrease, under USSG §3E1.1(a), for acceptance of responsibility based on his plea

agreement. *Id.* at ¶ 28. The probation officer affirmed that she had not identified any mitigating factors that would warrant a departure from the applicable sentencing guidelines. *Id.* at ¶ 83. Probation did, however, identify the following § 3553(a) factors that may warrant a sentence outside the guideline range: defendant shared multiple images and videos depicting child sexual abuse material that included toddlers and bestiality, defendant has no interest in obtaining his GED, defendant has a long history of substance abuse, defendant has familial support, and defendant did not accept responsibility for his offense conduct during the presentence interview. *Id.* at ¶ 84.

While probation calculated a term of imprisonment range between 135 and 168 months, the joint sentencing agreement determined that 60 to 70 months of imprisonment followed by at least 20 years of supervised release is appropriate given full consideration of each of the § 3553(a) factors. Further discussion of these factors is outlined in the memorandum herein.

## THE § 3553(a) FACTORS

Under 18 U.S.C. § 3553(a), when imposing a sentence, a court should consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of a defendant; (3) the need for the sentence imposed to promote the goals of sentencing; (4) the kinds of sentences available; (5) the sentencing guideline range; (6) any pertinent policy statement issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense.

//

**1. Nature and Circumstances of the Offense**

The defendant engaged in the creation and exchange of horrific depictions of child sexual abuse material; behavior that supports the government's recommended term of imprisonment.

O'Connor's illegal conduct came to light on August 13, 2024, after he contacted the United States Air Force Office of Special Investigations (AFOSI) to report an active-duty airman's sexual interest in minor children. PSR at ¶ 6. O'Connor had met this individual, Caleb French, over Grindr[1] and provided several of their text messages to AFOSI in an attempt to highlight French's aberrant sexual behavior. The content of the disclosed messages revealed that O'Connor and French planned to view child sexual abuse material together using a virtual reality system. *Id.* at ¶ 7.

O'Connor also provided AFOSI with two images of child sexual abuse material that he received from French during that conversation and still possessed on his cellphone. The images were described by the investigating officer as follows: (1) "[o]ne image depicted a naked grown man laying down with a large erect penis. Lying on top of the man is a naked young boy whose age seemed approximately five to seven years old[;]" (2) "[t]he second image depicted the upper part of a shirtless young boy, whose age seemed approximately five to seven years old, who had his face near what appeared to be a grown man's testicles and erect penis[.]"

//

---

[1] Grindr is an online dating application for gay, bisexual, queer, and transgender identifying individuals.

O'Connor subsequently consented to a full extraction of his cellphone where AFOSI found messages providing context of how O'Connor claimed he could create VR POV[2] using images of real children that French had taken in his local community. *Id.* at ¶ 8. The purpose of creating these depictions using VR POV is to simulate a virtual experience where the user feels as if they are actually experiencing the scene depicted. *Id.* at ¶ 7 n.4. O'Connor outright offered this use of VR POV, messaging French, "i can make those kids u took pics of if i wanted[.]" In addition to these messages, O'Connor had conversations with other unknown individuals where he admitted he had a problem and sent an AI rendered image of a female with her breasts and buttocks exposed.

Along with these incriminating conversations, law enforcement recovered more child sexual abuse material on O'Connor's cellphone, in addition to the two images he originally disclosed. *Id.* at ¶ 9. Specifically, six AI/cartoon drawings, four images, and two videos were retrieved during the extraction. *Id.* The two videos recovered were described in the PSR as follows: (1) "various folders consistent with known CSAM [child sexual abuse material] labels and CSAM is briefly displayed throughout the video. The folders which contained CSAM were labeled as 'rape, CP, teens, deep web pedo, SnapChat girls, young girls alone, and incest[;]" (2) "two nude prepubescent males performing manual sex on one another." *Id.* Additionally, three of the six AI images recovered were described in the PSR as follows: (1) "[a] nude toddler with an adult male penis ejaculating onto the

---

[2] VR POV stands for virtual reality point of view.

toddler's back[;]" (2) "[a] prepubescent female with an adult male penis in her mouth[;]" (3) "[a] nude prepubescent female with an adult male penis on her vagina[.]" *Id.*

On December 19, 2024, after the phone extraction had been reviewed by the FBI, law enforcement executed a search warrant on O'Connor's residence recovering numerous other devices. Upon the agent's arrival, O'Connor also consented to an interview with the FBI where he confessed to distributing child sexual abuse material to his current partner and other friends. Forensic analysis of O'Connor's seized property located an additional 20 images of child sexual abuse material. *Id.* at ¶ 11. Three of the images are described by the PSR as follows: (1) "[o]ne animated drawing of an animal engaged in sexual acts with a young anime individual[;]" (2) "[a] Telegram screenshot of an adult female performing cunnilingus on a prepubescent female, with the title of the Telegram channel listed as 'teen leak age 5-17'[;]" (3) "[a] Telegram screenshot image from a video of an adult male engaged in anal penetration with a prepubescent male." *Id.* In total, O'Connor possessed 32 images and three videos containing child sexual abuse material on his devices. *Id.* at ¶ 12.

**2. O'Connor's History and Characteristics**

At the young age of 32, O'Connor has an extensive criminal history, stemming from issues related to substance abuse and a difficult upbringing, demonstrating his propensity to violate the law. The defendant's most recent conviction includes charges of felony assault, driving under the influence of alcohol, and violating conditions of his release from an incident several months prior where he left the scene of an accident. *Id.* at

¶¶ 35–36. His earlier criminal record of offense conduct also includes charges of misconduct involving weapons, criminal mischief, theft, and harassment. *Id.* at ¶¶ 31–36.

O'Connor's history also shows his lack of interest in receiving a comprehensive education or stable employment. O'Connor quit schooling in the 11th grade and maintains that he has no interest in pursuing education or vocational training. *Id.* ¶ 55. His maternal grandmother stated this decision was because he was stubborn and refused to continue attending. *Id.* Prior to his arrest, O'Connor would complete various construction-related jobs in exchange for rent and reported he held a landscaping job from November 2023 to April 2024. *Id.* at ¶¶ 56–57. No additional employment history was provided to the probation office. *Id.*

During his presentence interview, O'Connor provided the complex details of his familial upbringing. The defendant frequently moved between foster care and his maternal grandparents' house, as a consequence of his family's substance abuse issues, where he lived with many siblings, several of which he still has occasional contact with. *Id.* at ¶¶ 43–44. Prior to his arrest, O'Connor resided in an apartment with his biological father, despite stating that he has never had a relationship with his father. *Id.* at ¶¶ 45, 48. While his biological parents were largely absent during his childhood, the defendant maintains that he has a good relationship with his mother who has visited him since his incarceration. *Id.* at ¶ 45.

O'Connor shared with probation that he would be willing to participate in mental health assessments, then subsequently declined interest in participating in any substance abuse treatment programs. *Id.* at ¶¶ 50–54. This neglected interest is particularly

concerning given that he reported he began consuming alcohol at the age of six or seven, has consumed marijuana daily since it was legalized in 2014, and has ingested methamphetamine on four separate occasions while residing in a halfway house. *Id.*

Additionally, while incarcerated in this matter, another inmate reported to ACC staff on July 31, 2025, that O'Connor allegedly made attempts to "grab at [that inmates] crotch." ACC Staff referred the matter for disciplinary action. The government is not aware of the outcome of that investigation, nonetheless, the allegations are troubling and indicate that mental health assessments are warranted in this case.

The history and characteristics of the defendant make clear that he has neglected to seek assistance or treatment and maintains this disinterested mindset. Probation's conversation with the defendant further reflects a serious lack of acceptance of his responsibility in the present matter. *Id.* at ¶ 84. O'Connor continues deflecting acknowledgement of his own sexual proclivities and problematic interest in minor children, commenting only on his frustrations of being detained and investigated following the report he made to AFOSI. *Id.* at ¶ 15. As such, his sentence should reflect this particular history and characteristics.

**3. Need to Deter Future Criminal Conduct and to Protect the Public**

A sentence of 70 months, at the low-end of the sentencing range, is sufficient but not greater than necessary to deter the defendant and others from engaging in this conduct in the future. The sentence in this case must constitute a loud and clear warning to potential sexual offenders that severe consequences will result from such atrocious acts. Indeed, "the deterrence objective of sentencing is 'particularly compelling in the child

*U.S. v. O'Connor*
3:25-cr-00003-SLG-KFR          Page 9 of 16

pornography context.'" *United States v. Irey*, 612 F.3d 1160, 1211 (11th Cir. 2010) (citation omitted). "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id.* (citation omitted); *accord United States v. Garthus*, 652 F.3d 715, 721-22 (7th Cir. 2011); *see also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.").

Distressingly, the market for child pornography has continued to grow, and to become more depraved, in recent years. *See, e.g.*, U.S. Sent'g Comm'n Hr'g on the Child Pornography Guidelines 1-2 (Feb. 15, 2012) (statement of James M. Fottrell, Steve DeBrota & Francey Hakes, Dep't of Justice), available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20120215/Testimony_15_Hakes_DeBrota_Fottrell.pdf. While child pornography in the past depicted naked children standing, sitting, or in secluded locations, the types of conduct now captured has become increasingly depraved. Of the child pornography victims identified by law enforcement, 52% - 55%* appear to be prepubescent, and 6% appear to be infants or toddlers.[3] The need for effective deterrence through a severe sentence is therefore essential. This is especially true, considering the

---

[3] Ethel Quayle & Terry Jones, *Sexualized images of children on the internet*, 23 SEXUAL ABUSE, 7–21 (2011).

lengths the defendant went through to minimize his criminal conduct—attempting to differentiate his interest in AI and drawings from child sexual abuse material involving real children—all while possessing images and videos that depicted real children and boasting about his ability to create VR POVs using images of real children. The defendant maintains anger at his incarceration, reflecting absolutely zero remorse or regret for how his actions have perpetuated harm for the children involved in the production of the child sexual abuse material. PSR at ¶ 15.

Given O'Connor's lack of appreciation for the seriousness of his conduct, and his extensive criminal history discussed prior, O'Connor's risk of recidivating is extremely high. Thus, a sentence of 70 months followed by 20 years of supervised release is necessary to deter the defendant from engaging in this dangerous and harmful conduct after he is released.

### 4. Need to Avoid Unwarranted Sentencing Disparities

The Court should impose the sentence recommended by the government to avoid unwarranted sentencing disparities. As one example, the Court can refer to the record for *United States v. Haladjian* where the defendant pled guilty to the possession of child pornography, under 18 U.S.C. § 2252A(a)(5)(B), and was sentenced to 70 months imprisonment. 603 Fed.Appx 561, 563–64 (9th Cir. 2015). Additionally, the Court can look to the related case sentencing French for guidance given the closeness of the defendants' offenses. *United States v. French*, No. 3:24-CR-00131-001-SLG (D. Alaska 2025). Investigation into French revealed his possession of hundreds of videos and images depicting child sexual abuse material involving real children, as well as images of

unsuspecting young children in the community that he routinely photographed. *Id.* After French was convicted for distribution of child sexual abuse material, under 18 U.S.C. § 2252A(a)(2), he was sentenced to a term of imprisonment of 120 months and a term of supervised release of 20 years. *Id.*

Like French, O'Connor also possessed videos and images of real as well as AI-generated child sexual abuse material. Given the fact that O'Connor possessed 32 images in comparison to the hundreds found on French's devices, as well as the fact that he promptly reported his own conduct to law enforcement, it is appropriate that his sentence would be lower than French's term. Accordingly, a term of 70 months imprisonment, the low-end of the advisory sentencing range, would be both appropriate and would prevent unwarranted sentencing disparities between defendants exhibiting similar offense conduct.

The PSR also reviews that "[d]uring the last five fiscal years (FY2020-2024), there were 23 defendants whose primary guideline was §2G2.2, with a Final Offense Level of 31 and a Criminal History Category of III, after excluding defendants who received a §5K1.1 substantial assistance departure." PSR at ¶ 9 (sentencing recommendation). For these 23 defendants who received a term of imprisonment, "the average length of imprisonment imposed was 125 month(s) and the median length of imprisonment imposed was 120 month(s)." *Id.* The joint sentencing recommendation of 70 months is below both the average and median lengths of imprisonment for similarly situated defendants, which is appropriate when taking all of the § 3553(a) factors into consideration.

//

**5. Need to Provide Treatment to Defendant**

Due to the nature of O'Connor's crimes, he should be ordered to participate in a sex offender treatment program while incarcerated to increase the chance that he might learn to control his behavior. "[C]onditions are permissible if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender, and 'involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release.'" *United States v. Rearden*, 349 F.3d 608, 618, 621 (9th Cir. 2003) (citation omitted) ("We are persuaded that limiting [defendant's] Internet access without prior approval of the Probation Office is reasonably related to the offense that involved e-mail transmissions of quite graphic child pornography[.]"). O'Connor should be ordered, as a condition of any supervised release, to undergo a sex offense-specific evaluation and participate in a sex offender and/or mental health treatment program approved by the probation office. The Court should order all special conditions of supervision including polygraph testing and restrictions on access to minors, the internet, and internet-capable devices.

**6. Supervised Release**

Congress, in the PROTECT Act, provided for a range of 5 years to lifetime term of supervised release for the offense for which O'Connor will be sentenced. The concern was that sex offenders, such as O'Connor, who have demonstrated their sexual interest in minors, have restrictions placed on their access to minors, computers, the internet, etc. in order to minimize the risk that they will reoffend. While probation is recommending that O'Connor receive 15 years of supervised release in the revised PSR, the parties agreed that

a minimum term of 20 years of supervised release would be appropriate. The longer the term of supervision, the lower the risk of reoffending that O'Connor will present to the public, since part of the supervision process will include registration as a sex offender, restrictions on access to minors, computers, and the internet.

## 7. AVAA and Restitution Assessments

The government would normally ask for a mandatory assessment imposed by the Justice for Victims of Trafficking Act (JVTA), but the statute expired on September 30, 2025. Therefore, no assessment can be ordered.

On December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA). The Act instructs that, in addition to any restitution or other special assessment, courts "shall assess not more than $35,000 on any person convicted of any other offense for trafficking in child pornography[.]" 18 U.S.C. § 2259A(a)(2). The Act defines the term "trafficking in child pornography" as *inter alia* conduct proscribed by 18 U.S.C. § 2252A(a)(1) through (5), including defendant's receipt charge under 18 U.S.C. § 2252A(a)(2). 18 U.S.C. § 2259(c)(3). Assessments collected under this statute are deposited in the Child Pornography Victims Reserve, which provides monetary assistance to victims of trafficking in child pornography, *see* 18 U.S.C. §§ 2259A(d), 2259B, and shall be paid in full after any special assessment under 18 U.S.C. § 3013 and any restitution to victims of the defendant's offense, *see* 18 U.S.C. § 2259A(d)(2).

In determining the amount to be assessed under 18 U.S.C. § 2259A, courts should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and the guidance in

*U.S. v. O'Connor*
3:25-cr-00003-SLG-KFR          Page 14 of 16

18 U.S.C. § 3572 for the imposition of fines. 18 U.S.C. § 2259A(c). Pursuant to 18 U.S.C. § 2259(c)(3) the Court must, at a minimum order mandatory restitution based on any victims' losses in an amount that reflects no less than $3,000. PSR at ¶ 79. If any victim is identified at sentencing the Court shall enter appropriate restitution. *Id.* at ¶ 80.

Although the defendant is subject to an additional fine between $30,000 and $300,000 based on his offense conduct, the PSR evaluates that O'Connor's lack of income, bank accounts, and limited assets reflect his inability to pay a fine in addition to his anticipated restitution and assessments. *Id.* at ¶ 65, 76. The defendant reported that he has no vehicles, liens, or mortgages, however, APSIN provided that he has a 2001 Chevrolet pickup listed in his name. *Id.* at ¶ 60, 63. The defendant should be able to redirect these assets to pay special assessment fees upon his release from imprisonment if not at the time of sentencing. *See* 18 U.S.C. § 3613 (noting that the liability to pay a fine or restitution shall terminate the later of 20 years from the entry of judgment or 20 years after the release from imprisonment, whichever is later); *see also United States v. Graves*, 908 F.3d 137, 141 (5th Cir. 2018).

Accordingly, the United States respectfully requests that the Court impose the $35,000 special assessment under 18 U.S.C. § 2259A in addition to the $100 mandatory special assessment for his felony conviction pursuant to 18 U.S.C. § 3013 and any costs of prosecution pursuant to USSG §5E1.5.

### SENTENCING EXHIBITS AND IMPACT STATEMENTS

The United States reserves the right to present testimony, additional exhibits (including samples of O'Connor's child exploitation images and other material recovered

during the investigation), and a supplemental filing in response to any memoranda or exhibits that O'Connor files or chooses to introduce prior to or at sentencing.

## CONCLUSION

In requesting 70 months of imprisonment followed by 20 years of supervised release, with additional financial sanctions, the government has considered the seriousness of O'Connor's conduct, the advisory sentencing guidelines range calculated by the probation office, and the § 3553(a) factors. For the reasons stated above, the United States asks the Court to follow the recommendations in this memorandum.

RESPECTFULLY SUBMITTED November 5, 2025 at Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

s/ *Mac Caille Petursson*
MAC CAILLE PETURSSON
Assistant United States Attorney
United States of America

s/ *McKenzie Hightower*
MCKENZIE HIGHTOWER
Trial Attorney
United States Department of Justice
Child Exploitation and Obscenity Section

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2025 a true and correct copy of the foregoing was served electronically on all counsel of record.

s/ *Mac Caille Petursson*